# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION
_____

ERIK BEAUCHAMP,

    Petitioner,

v.                                                                                       Case No. 17-13986

RANDALL HAAS,

    Respondent.
_____/

## OPINION AND ORDER DENYING "PETITION FOR WRIT OF HABEAS CORPUS" AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner Erik Beauchamp filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his Wexford County Circuit Court jury trial conviction for second-degree murder, Mich. Comp. Laws § 750.317, for which he received a sentence of thirty-seven years, six months to sixty years' imprisonment. The petition raises two claims: (1) that the trial court erred in failing to instruct the jury on the lesser offense of voluntary manslaughter; and (2) that the prosecutor committed multiple instances of misconduct during closing argument. For the reasons provided below, the court will deny the petition. The court will also deny a certificate of appealability.

## I. BACKGROUND

Petitioner's conviction arises from the August 8, 2014 shooting death of Lindsey Morgan. The Michigan Court of Appeals affirmed Petitioner's second-degree murder conviction. *People v. Beauchamp*, 2016 WL 3421405 (Mich. Ct. App. June 21, 2016). Its description of trial testimony is summarized below. That court's factual findings are

presumed correct on habeas review. 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

Petitioner and Morgan, both alcoholics, had two children together and an on-again, off-again relationship. *Beauchamp*, 2016 WL 3421405, at *1. Morgan occasionally left Petitioner for another man, their neighbor Joseph Traylor. Two days before Petitioner shot and killed Morgan, they had a fight. *Id*. The next day, Petitioner saw Morgan "put the children into her mother's van and leave." *Id*. Shortly thereafter, on the phone, Morgan taunted Petitioner about losing his children. *Id*. She also texted him to say, "I'm sorry, but I am done." *Id*.

The next day, Petitioner went to work, but left because he was unable to focus due to being upset. *Id*. at *2. After returning home, he told his mother "he loved her and was sorry he had to kill himself." *Id*. He went into the woods behind his property with a few bottles of beer, a 12-gauge shotgun, and a .22 caliber pistol. *Id*. His mother called police. Officer Daniel Johnson arrived and spoke to Petitioner on the phone. *Id*. When Petitioner "refused to come out of the woods to talk[,]" the officer decided he could take no action because Petitioner had not committed a crime. *Id*.

Defendant testified at trial that he both "wanted to die" but also wanted to confront Morgan. *Id*. His sister said he called her, saying he was going to kill both Morgan and Traylor, the neighbor. *Id*. Morgan's mother also testified that Morgan told her that Petitioner had called Morgan and had said he was coming to kill her. *Id*.

A friend driving to Traylor's house to meet Morgan saw Petitioner "walking toward the house with a shotgun." *Id*. When Petitioner reached the house, he broke in, and "began beating the door" of the bathroom where Morgan had taken the children. *Id*. at

*3. "Morgan came out and the two began struggling over the shotgun[.]" *Id.* The fight continued through the house with Petitioner repeatedly punching Morgan. *Id.* Morgan also hit Petitioner "a couple of times in the head with the shotgun they were both holding." *Id.* The shotgun went off, "Morgan got ahold of [it]" and ran out of the house. *Id.* Outside the house, Petitioner shot Morgan three times with his pistol, twice in the head, and also beat her with the pistol. *Id.* "Morgan died as a result of the gunshot wounds." *Id.*

The jury acquitted Petitioner on the first-degree murder charge but convicted him of second-degree murder. *Id.* He raised two issues on direct appeal: (1) that the trial court erred in denying his request for a jury instruction on the lesser-included offense of voluntary manslaughter; and (2) that the prosecutor engaged in misconduct during closing argument.

The Michigan Court of Appeals rejected both issues and affirmed the conviction. *Id.* The Michigan Supreme Court denied Petitioner leave to appeal in a standard form order. *People v. Beauchamp*, 500 Mich. 925, 888 N.W.2d 105 (2017). Petitioner's timely *pro se* habeas petition followed, in which he presents the same two issues raised before the state appellate courts.

## II. STANDARD

28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

3

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000) (O'Connor, J., concurring). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings . . . and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citation omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation and citation omitted). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is

4

possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal habeas review. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. *Id*. Moreover, for claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. DISCUSSION

### A. JURY INSTRUCTION

On the issue of whether Petitioner was entitled to a lesser-offense instruction on voluntary manslaughter, the state court of appeals held that the trial court did not err in ruling against Petitioner's request. Reviewing Michigan law, it noted that a defendant is entitled to a lesser-included offense instruction "if it is rationally supported by the evidence[,]" and that "[v]oluntary manslaughter is a necessarily included lesser offense of murder." *Beauchamp*, 2016 WL 3421405, at *4 (citing *People v. Mendoza*, 468 Mich. 527, 533, 541, 664 NW2d 685 (2003)). However, analyzing the elements of voluntary manslaughter, it held that Petitioner's explanation for provocation was unavailing, especially given that an aggressor cannot use self-defense to reduce a charge from murder to manslaughter. *Id*. at *5 (citations omitted). It also found that no reasonable jury could find that Petitioner lacked adequate time to cool down between the time Morgan took his children away and his fatal attack on her, when during the intervening

5

fifteen hours Petitioner "called his mother, cleaned up camping equipment, went to his mother's house and slept, went to work the next morning, collected and cashed his paycheck, bought items at a store, went to his property, walked around in the woods, and walked about three miles to Traylor's house." *Id.*

A trial court's failure to give a "lesser-included-offense" jury instruction can violate due process. *Bowling v. Parker*, 344 F.3d 487, 499 (6th Cir. 2003) (citing *Beck v. Alabama*, 447 U.S. 625 (1980)). However, "due process does not require an instruction on a lesser-included offense if the evidence does not support such an instruction." *Id.* at 500 (citing *Hopper v. Evans*, 456 U.S. 605 (1982)).

In *Bowling*, the Sixth Circuit analyzed a similar failure to instruct the jury on manslaughter as a lesser-included offense of murder. *Id.* at 499. The court determined that the petitioner had not established a necessary element of a triggering event causing "extreme emotional disturbance," sufficient to explain a fatal shooting which followed a "minor car accident." *Id.* at 500, 502. The *Bowling* court found the Kentucky Supreme Court's conclusions not unreasonable in its "determin[ation] that the evidence at trial would not permit a rational jury to find extreme emotional disturbance," and that the requested instruction was not necessary. *Id.* at 500, 502.

Similarly, the evidence before the state courts in Petitioner's case did not support an instruction of voluntary manslaughter. The Michigan Court of Appeals was not unreasonable to hold that no rational jury could find Petitioner had grounds for provocation or that fifteen hours was an insufficient time for Petitioner to control his emotions. *Beauchamp*, 2016 WL 3421405, at *4-5.

## B. PROSECUTOR MISCONDUCT

Petitioner charges several instances of error during the prosecutor's closing statement, including those Petitioner alleges were unsupported by the evidence and denigrated the defense. He challenges such remarks as "murder in the nth degree" (based on photographs of the victim); that Petitioner was "not an enraged boyfriend, he's an executioner . . . a militant on a mission"; and that if he was "super nuts . . . Why didn't he kill more people?" (ECF No. 9-22, PageID.2364.)

The state court of appeals found Petitioner's objections to be without merit as the remarks were either supported by the evidence, responsive to defense theories, or permissible as "colorful rhetoric." *Id.* at *7-8. The single instance the court found "improper" as not based on evidence was isolated, immediately objected to, and was addressed by curative instruction. *Id.* at *6.

On habeas corpus review, prosecutorial misconduct violates the Constitution only if a prosecutor's comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) and confirming *Darden* as the "clearly established Federal law" on this issue). The *Darden* decision provides state courts "significant leeway to evaluate prosecutorial misconduct claims on a case-by-case basis." *Halvorsen v. White*, 746 Fed. App'x 489, 497 (6th Cir. 2018) (citing *Parker*, 567 U.S. at 48). Even where prosecutors' statements were so extreme as to be "universally condemned," the inquiry remains whether due process was denied. *Darden*, 477 U.S. at 181.

On habeas review, the AEDPA raises the bar even higher than the "high standard" set by *Darden*. *Halvorsen*, 746 Fed. App'x at 499. To obtain habeas relief, "[t]he misconduct must so clearly violate *Darden* that the state court's failure to identify it was not just erroneous, but 'objectively unreasonable.'" *Id.* at 497 (citing *Williams*, 529 U.S. at 409).

The prosecutor's remarks here do not remotely rise to *Darden*'s example, in which the prosecutor referred to the defendant as an "animal" and expressed the wish that he "could see [the defendant] with no face, blown away by a shotgun." *Darden*, 477 U.S. at 180, nn.11 & 12. Nor was habeas relief granted in *Halvorsen*, where the prosecutor referred to the defendant as "the executioner of three people" and cited notorious historical murderers by name to argue for the death penalty. 746 Fed. App'x at 499, 500; *see also DeJesus v. Lafler*, 2006 WL 3759911, at *7 (E.D. Mich. Dec. 20, 2006), *aff'd on other grounds*, 277 F. App'x 594 (6th Cir. 2008) (remarks that defendants were "brutal and savage murderers" and "sadistic executioners" were improper, but jurors were likely not misled "[i]n light of substantial evidence that [defendants participated in] committing a brutal murder").

Further, many of the remarks to which Petitioner objects were in response to the defense theory that Petitioner killed Morgan on impulse or provocation rather than with pre-meditation. In the face of testimony of multiple witnesses (including Petitioner's own sister) that Petitioner intended to kill Morgan, the state court was not unreasonable to find that the prosecutor's remarks did not deprive Petitioner of a fair trial.

## IV. CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal the court's decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation and quotation marks omitted). In this case, reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. The court will deny a certificate of appealability.

## V. CONCLUSION

Petitioner is not entitled to habeas corpus relief for the state trial court's jury instruction or for the prosecution's closing statement. The petition for a writ of habeas corpus and a certificate of appealability are denied. Accordingly,

IT IS ORDERED that Petitioner's "Petition for Writ of Habeas Corpus" is DENIED.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

s/Robert H. Cleland          /<br>
ROBERT H. CLELAND<br>
UNITED STATES DISTRICT JUDGE

Dated: November 5, 2019

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 5, 2019, by electronic and/or ordinary mail.

s/Lisa Wagner          /<br>
Case Manager and Deputy Clerk<br>
(810) 292-6522